UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PLATTE RIVER INSURANCE COMPANY,

Plaintiff,

v.

DIGNITY HEALTH f/k/a CATHOLIC HEALTHCARE WEST d/b/a MERCY GENERAL HOSPITAL,

Defendant.
_____/

No. C-12-2356 EMC

**ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE STAY AND ENJOIN ARBITRATION**

**(Docket No. 32)**

## I. INTRODUCTION

This case is an insurance coverage dispute stemming from an $82 million judgment in a separate sexual harassment case against Defendant Dignity Health ("Dignity"), formerly known as Catholic Healthcare West, doing business as Mercy General Hospital, in the matter of *Chopourian v. Catholic Healthcare West*, Case No. C-09-2972-KM-KJN (E.D. Cal.). Following entry of judgment, Plaintiff Platte River Insurance Company ("Platte River"), one of Dignity's insurers, denied Dignity coverage for this judgment and subsequently filed this action for declaratory relief in May 2012, as did another of Dignity's insurers, Arch Insurance Company ("Arch"). After a "Standstill Agreement" entered by the parties and subsequent stay issued by the Court in August 2012, Dignitary filed a separate arbitration action against Platte River, Arch, and another insurer, Federal Insurance Company, in November 2012 seeking coverage for the *Chopourian* judgment. Platte River now requests that the Court enjoin Dignity from continuing with its separate arbitration action

due to the stay in this action, the parties' Standstill Agreement, and Dignity's alleged waiver of its right to pursue arbitration.

For the reasons stated herein, the Court **DENIES** Platte River's motion to enjoin the separate arbitration action and leaves in place the stay of this action pending resolution of the parties' dispute in arbitration.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.  Insurance Policy

Platte River issued excess liability insurance policy number 0303-2404 to Dignity for the December 1, 2008 to December 1, 2009 Policy Period (the "Policy"). Compl., Docket No. 1, ¶ 7, Ex. A. The Policy provides that "coverage under this Policy will apply in conformance with the terms and conditions of, and endorsements to, the **Primary Policy** and any other **Underlying Insurance**." Compl. Ex. A, Endorsement 8 (emphasis in original). The Policy defines the "Primary Policy" as Federal Insurance Company policy number 8170-2460. *Id.* at 1. That policy contains an arbitration clause providing, in full, that

> [a]ny dispute between any **Insured** and the Company based upon, arising from, or in consequence of any actual or alleged coverage under this coverage section, or the validity, termination or breach of this coverage section, including but not limited to any dispute sounding in contract or tort, shall be submitted to binding arbitration pursuant to the then prevailing commercial arbitration rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Company, and a third arbitrator selected by the first two arbitrators.

*Id.*, Ex. B, at 29 (emphasis in original). The Policy provides that Platte River will provide $10,000,000 in excess liability insurance beyond the $10,000,000 liability insurance provided by Federal Insurance Company policy number 8170-2460. *See* Compl. ¶¶ 7-9, Ex. A at 1.

B.  *Chopourian* Lawsuit and Initiation of This Litigation

In 2009, Ani Chopourian initiated a lawsuit against Dignity, then known as Catholic Healthcare West, asserting numerous claims stemming from her employment by Dignity as a Physician's Assistant. *See* Compl. Ex. C (Second Amended Complaint, *Chopourian v. Catholic Healthcare West*, Case No. C-09-2972-KJM-KJN (E.D. Cal. Feb. 16, 2010), Docket No. 19). After

a trial in the matter, the jury returned an approximately $180 million verdict in Ms. Chopourian's favor on February 29, 2012. Decl. of Smith in Support of Pl.'s Mot. ("Smith Decl."), Docket No. 33, Ex. 5 (Verdict Form). Dignity notified Platte River on March 12, 2012 of the jury verdict. Decl. of Briggs in Opp'n to Mot. ("Briggs Decl."), Docket No. 36, ¶ 6. Platte River denied coverage on April 10, 2012. *Id.*; Smith Decl. Ex. 7 ¶ A (Standstill Agreement). The court subsequently reduced the verdict to $82,330,484.80 by order dated April 30, 2012. Smith Decl. Ex. 6 (Order & Judgment).

Platte River filed the current suit on May 9, 2012 seeking declaratory relief that Dignity provided Platte River with late notice, that the Policy does not cover punitive damages, that the Policy does not cover damages resulting from Dignity's willful conduct, and that the Policy does not cover Dignity's failure to provide meal and rest breaks. *See* Compl. ¶¶ 21-44. Arch also filed a complaint against Dignity for declaratory judgment on May 10, 2012, which the Court subsequently related to this case on June 15, 2012. Smith Decl. Ex. 7 ¶¶ D-E (Standstill Agreement); Order Granting Mot. to Relate, Docket No. 17.

C.  Standstill Agreement and Stay

After this case was filed, Dignity continued to contest the *Chopourian* judgment via post-trial motions for partial judgment as a matter of law and for a new trial or damages remittitur filed on May 29, 2012, both of which were set for hearing on September 28, 2012. Briggs Decl. Ex. C (Post-Trial Motions). Given that the outcome of these motions could have impacted this lawsuit, on August 14, 2012 the parties stipulated to a stay of this case "pending complete and final resolution of the *Chopourian* lawsuit," which stay the Court granted on August 16, 2012. Stip. and Order, Docket No. 23.

Around the time the parties stipulated to a stay of this case, they *also* entered a separate "Standstill Agreement" (the "Agreement") laying out several additional agreements between the parties. Smith Decl. Ex. 7. For example, the Agreement provides that Dignity agreed not to "request, insist, or demand" that Platte River "attend, participate in, respond to, or contribute to" any settlement negotiations in connection with the *Chopourian* lawsuit or assert that Platte River was obligated to so attend, participate in, respond to, or contribute to such proceedings. *Id.* ¶¶ 1-3.

3

1  Similarly, Platte River agreed not to assert that it "should have been informed, advised, updated, or
2  otherwise provided notice of" such proceedings. *Id.* ¶ 6.
3        Central to the current motion, the agreement provides that Dignity "further agrees not to
4  make any demands or requests for insurance coverage to Platte River or Arch, in connection with the
5  *Chopourian* lawsuit, until the conclusion of the *Platte River* action and the *Arch* action." *Id.* ¶ 4.
6  Correspondence between the parties shows that this provision was not in the original draft of the
7  agreement, but was added by counsel for Arch. Reply Decl. of Terrence McInnis ("McInnis Decl."),
8  Docket No. 38, ¶¶ 2-4, Exs. 1-3. Dignity objected to the duration of this provision, seeking to have
9  it expire upon conclusion of the stay, but ultimately capitulated on this point, as evidenced by its
10 execution of the agreement providing that it would last "until the conclusion of the *Platte River*
11 action and the *Arch* action." *Id.* Ex. 4; Smith Decl. Ex. 7 ¶ 4.

12 D.    <u>Settlement and Arbitration</u>

13       On or around November 5, 2012, Dignity and Ms. Chopourian reached a settlement in
14 principle, the terms and conditions of which were memorialized in a term sheet. Briggs Decl. ¶ 12.
15 The subsequent day, November 6, 2012, Dignity provided a first draft of a joint Case Management
16 Conference ("CMC") statement in this case, whereby it notified Platte River of the settlement in the
17 *Chopourian* case. Smith Decl. ¶ 6. The parties finalized and filed their joint CMC statement on
18 November 7, 2012. *Id.* ¶¶ 6-7; Joint CMC Statement, Docket No. 30.

19       That same day, Dignity filed a demand for arbitration seeking coverage for the *Chopourian*
20 settlement against Platte River with the American Arbitration Association ("AAA"), requesting a
21 hearing locale of Phoenix, Arizona. Smith Decl. Ex. 10 (Arbitration Demand); McInnis Decl. Ex. 5
22 (Arbitration Demand Excerpt). Platte River learned of this demand two days later, on November 9,
23 2012, when it received a packet of documents including Dignity's arbitration demand. Smith Decl.
24 ¶ 8. Up to that point, Dignity had never advised Plaintiff of an intent to arbitrate this matter or of
25 any belief that the matter was subject to arbitration. *Id.* ¶ 10.

26       Dignity then negotiated the final terms and conditions of the settlement with Ms.
27 Chopourian, which agreement was signed on or about November 28, 2012. Briggs Decl. ¶ 13.
28 Platte River filed the current motion requesting that the Court enforce the stay and Standstill

1  Agreement two days later on November 30, 2012. Pl.'s Mot., Docket No. 32. Upon review of the
2  parties' papers, this Court ordered supplemental briefing as to whether this case is subject to
3  mandatory arbitration and whether the parties wish for the Court to lift the stay in this matter. *See*
4  Order, Docket No. 39. The parties submitted responsive briefs on January 18, 2013 and a hearing on
5  this matter was held on February 14, 2013. *See* Def.'s Supp. Brief, Docket No. 41; Pl.'s Supp. Brief,
6  Docket No. 40; Minute Entry, Docket No. 44.

### III. DISCUSSION

The Court is presented with several related yet distinct questions, including: (1) whether the stay in this case prohibits Dignity from proceeding with its arbitration demand; (2) whether the Standstill Agreement prohibits Dignity from proceeding with its arbitration demand; (3) whether, regardless of the Standstill Agreement, Dignity has waived its right to arbitration; and (4) whether the first-to-file rule somehow bans Dignity's arbitration action.

#### A. Stay

First, Platte River suggests that Dignity violated the stay in this case when it filed a duplicative arbitration action. *See* Pl.'s Mot. 6-7. Defendant does not directly respond to this argument. However, the stay does not prohibit filing a concurrent arbitration. *See* Smith Decl. Ex. 8. Rather, it provides that "the *Platte River/Arch* action shall be stayed," making no mention of any other litigation and specifically providing that "the parties do not waive any claims or defenses whatsoever." *Id.* Thus, the stay did not prohibit the filing of the arbitration demand.

#### B. Standstill Agreement

Regarding the effect of the Standstill Agreement, Platte River does not dispute that the original arbitration agreement would have covered the dispute which is the subject of this action. Rather, it contends that the Standstill Agreement constituted a modification of the original arbitration agreement. *See* Pl.'s Supp. Br. 1-2.

In determining whether a dispute is subject to arbitration, the court's role under the Federal Arbitration Act (FAA) is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir. 2000). While the first question is a matter of

contract interpretation governed by state law without any presumption in favor of arbitrability, the second question falls under the Federal Arbitration Act's clear policy favoring arbitration, whereby "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Applied Energetics, Inc. v. NewOakl Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made"). At both stages, "in deciding whether a contractual obligation to arbitrate exists, 'courts should generally apply state-law principles that govern the formation of contracts.'" *Applied Energetics*, 645 F.3d at 526 (quoting *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000)); *see also Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 956 (9th Cir. 2012).

### 1. Law of Contract Interpretation

In California, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. When construing a written contract, "the intention of the parties is to be ascertained from the writing alone, if possible," subject to certain exceptions, such as when, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties. Cal. Civ. Code §§ 1639-40. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. In addition, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Cal. Civ. Code § 1647.

"Where parties dispute the meaning of contractual language, the first question to be decided is whether the disputed language is reasonably susceptible to the interpretation urged by the party. If it is not, the case is over." *Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1223 (9th Cir. 2008) (quotation marks omitted) (quoting *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516 (2003)). In deciding this question "the trial court must

provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." *Id.* (quoting *Morey v. Vannucci*, 64 Cal. App. 4th 904 (1998)). "'If in light of the extrinsic evidence the court decides the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is then admitted to aid in . . . interpreting the contract.'" *Id.* (quoting *ASP Properties Group v. Fard, Inc.*, 133 Cal. App. 4th 1257 (2005)).

### 2. Reasonably Susceptible to Parties' Interpretations

As discussed in *Halicki Films*, the Court must first consider whether paragraph 4 of the Standstill Agreement is "reasonably susceptible" to the meaning urged by each party. Dignity argues that paragraphs one through four merely "protected Platte River from any subsequent claim by Dignity Health that it could have – or should have – participated in settlement discussions or any mediation in the Underlying Action during the pendency of the Stay," Def.'s Opp'n 12, and was not intended to eliminate the arbitration as a mode of resolving any coverage dispute. The Standstill Agreement is reasonably susceptible to this interpretation, as it makes numerous references to conduct surrounding negotiation of the *Chopourian* settlement. *See, e.g.*, Smith Decl. Ex. 7 ¶¶ 1-3, 5-8. It may reasonably be inferred that the Agreement was designed to arrest the escalation of any additional bad faith liability claims. *See, e.g.*, *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 689 (1957) ("In deciding whether the insurer's refusal to settle constitutes a breach of its duty to exercise good faith, the following factors should be considered: . . . attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; . . . failure of the insurer to inform the insured of a compromise offer; . . . the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer.").

On the other hand, the Standstill Agreement is also reasonably susceptible to Platte River's urged interpretation, that paragraph 4 operates to negate the parties' earlier arbitration agreement. Under the Standstill Agreement, Dignity agreed "not to make any demands or requests for insurance coverage to Platte River or Arch, in connection with the *Chopourian* lawsuit, until the conclusion of

the *Platte River* action and the *Arch* action." Smith Decl. Ex. 7 ¶ 4. While a notice invoking arbitration is not necessarily a demand for insurance coverage, but rather a demand for an adjudication process, in the text of its arbitration demand, Dignity states that "[b]y this *demand*, Dignity hereby seeks coverage for the settlement . . . in the action entitled *Ani Chopourian v. Catholic Healthcare West* . . . ." McInnis Decl. Ex. 5 (emphasis added). Thus, a demand for coverage inheres in the demand for arbitration and is plausibly covered by Paragraph 4.

Thus, the Standstill Agreement is reasonably susceptible to either suggested meaning.

### 3. Contract Interpretation

Having found that the Standstill Agreement is reasonably susceptible to each party's urged interpretation and is thus ambiguous, the Court next turns to principles of contract interpretation to ascertain the parties' intent in light of extrinsic evidence submitted by the parties. In particular, the Court finds relevant arguments raised by the parties regarding (1) extrinsic evidence of intent; and (2) whether reading the Standstill Agreement as a whole demonstrates an intent to supplant arbitration with this lawsuit.

#### a. Extrinsic Evidence of Intent

Neither party has produced any extrinsic evidence to suggest that the parties intended to modify their existing arbitration agreement in entering the Standstill Agreement. Neither party mentioned it during the negotiations. *See* Smith Decl. ¶ 10. If anything, the extrinsic evidence suggests the Agreement was simply designed to insulate Platte River from further claims of bad faith arising out of the *Chopourian* lawsuit; the surrounding negotiations show that the Standstill Agreement was negotiated in the context of ongoing settlement discussions in the *Chopourian* lawsuit. *See* Briggs Decl. ¶¶ 10-12.

The only possible extrinsic evidence to the contrary is the fact that Arch sought to extend the Standstill Agreement "through the conclusion of the coverage actions, rather than until the stay is lifted." *See* McInnis Decl. Ex. 2 (request from counsel for Arch), Ex. 3 (draft showing insertion of disputed provision), Ex. 4 ("we have incorporated your proposed changes, except re the time period issue discussed above."); Smith Decl. Ex. 7 (final Standstill Agreement showing ultimate concession by Defendant on issue of time period). That the insurer sought to extend the Agreement beyond the

8

stay to the conclusion of the coverage dispute is not very probative of an intent to subsume the arbitration agreement. Arch could have wanted to preclude the escalation of any bad faith claim that might arise after the stay but during the pendency of the instant case. Thus, the extrinsic evidence submitted by the parties does not support Platte River's argument that the intent of the Standstill Agreement was to supplant arbitration with this action.

          b.        <u>Reading Agreement As a Whole</u>

Dignity also argues that the Standstill Agreement, when read as a whole, does not contemplate modification of the parties' arbitration agreement. Def.'s Opp'n 10-11; Def.'s Supp. Br. 8-9. The Standstill Agreement preserves "any defense, contention, argument, privilege or legal right that existed prior to the stay of the *Platte River/Arch* action . . . except as set forth in this Agreement . . . ." *See* Smith Decl. Ex. 7 ¶ 10. This paragraph suggests that, except where explicitly mentioned, the parties did not intend to modify any rights, such as a right to arbitration, that they held before entering the Standstill Agreement. As discussed above, neither the Standstill Agreement nor the parties' negotiations surrounding the Standstill Agreement even mention arbitration. Thus, the Standstill Agreement's preservation of defenses would seem to evidence an intent *not* to override the parties' preexisting arbitration agreement.

The rest of the Standstill Agreement suggests, as noted above, that its main thrust is the protection of the insurers from any *additional* liability surrounding resolution of the *Chopourian* matter and the parties' subsequent coverage dispute. The bulk of the Standstill Agreement excuses the parties for failure to exercise their rights and obligations surrounding resolution of the *Chopourian* matter. *See* Smith Decl. Ex. 7 ¶¶ 1-3, 5-9. This language is aimed directly at protecting Platte River from a potential bad faith action. *See, e.g.*, *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 689 (1957) (describing factors to consider in determining bad faith liability surrounding settlement).

In sum, the Standstill Agreement, when read as a whole, supports Dignity's interpretation.

          c.        <u>Summary</u>

The Court is not persuaded that the intent of the Standstill Agreement was to supplant the parties' preexisting arbitration agreement. The Standstill Agreement is completely silent as to

1  arbitration, as were the negotiations surrounding it. Moreover, the context of the Standstill
2  Agreement and the document read as a whole suggest that it was aimed at preventing any further bad
3  faith actions against Platte River, rather than allowing Platte River to nullify the arbitration
4  agreement. Thus, the Court finds the arbitration agreement remains in force.

C.   Waiver

Even if the parties did not agree to modify their preexisting arbitration agreement, the question remains whether Dignity nevertheless waived its right to pursue arbitration.

1.   Legal Standard

There is a conflict within the Ninth Circuit regarding what test courts should apply in analyzing whether a party waived its contractual right to arbitrate. The majority of cases to have considered the matter have adopted the three-factor test laid out in *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986), that "[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *See, e.g.*, *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988); *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 934 (9th Cir. 2011); *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). However, as pointed out by the court in *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 n.7 (9th Cir. 2008), the three-factor test adopted in *Fisher* "is not based on California law," which requires a six-factor test considering

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

1  Cox, 533 F.3d at 1124 (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1196
2  (2003)).  Under either test, the party seeking to assert waiver bears a "heavy burden of proof."  *See*
3  *St. Agnes*, 31 Cal. 4th at 1195; *Fisher*, 791 F.2d at 694 (quoting *Belke v. Merrill Lynch, Pierce,*
4  *Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982)).

5  Here, the Court need not determine which test is appropriate, as, under either test, Plaintiff
6  has not shown prejudice.

       2.      <u>Prejudice</u>

8  Both the six-factor and three-factor tests emphasize that a party's acts inconsistent with the
9  right to arbitrate must prejudice the opposing party.  *See St. Agnes*, 31 Cal. 4th at 1196, 1203-05 ("In
10 California, whether or not litigation results in prejudice . . . is critical in waiver determinations. ");
11 *Fisher*, 791 F.2d at 694 ("A party seeking to prove waiver of a right to arbitration must demonstrate
12 . . . prejudice to the party opposing arbitration resulting from such inconsistent acts.").  "[C]ourts
13 will not find prejudice where the party opposing arbitration shows only that it incurred court costs
14 and legal expenses." *St. Agnes*, 31 Cal. 4th at 1203; *see also Fisher*, 791 F.2d at 698 (no prejudice
15 where party subject to arbitration agreement willingly asserted claims in court and accrued expenses
16 as a result).  Instead, "[p]rejudice typically is found only where the . . . conduct [of the party against
17 whom waiver is asserted] has substantially undermined th[e] important public policy [in favor of
18 arbitration] or substantially impaired the other side's ability to take advantage of the benefits and
19 efficiencies of arbitration."  *Id.* at 1204.  For example, prejudice has been found "where the
20 petitioning party used the judicial discovery processes to gain information about the other side's
21 case that could not have been gained in arbitration; where a party unduly delayed and waited until
22 the eve of trial to seek arbitration; or where the lengthy nature of the delays associated with the
23 petitioning party's attempts to litigate resulted in lost evidence."  *Id.* (citations omitted); *see also*
24 *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 847 (N.D. Cal. 2012) ("Where
25 courts have found prejudice from delay, the parties had engaged in extensive discovery, or the case
26 was on the verge of trial and the parties had engaged in significant trial preparation.").

27 Here, Platte River asserts that it suffered prejudice because it was effectively deprived of the
28 opportunity to receive a coverage determination – either through this action or through arbitration –

prior to settlement of the *Chopourian* action and the opportunity to participate in the decision to settle that action. *See* Pl.'s Supp. Br. 4. Platte River seems to be suggesting that, had it known that Dignity intended to arbitrate this case, it would not have agreed to the stay or Standstill Agreement. The logic behind this strategic decision is not apparent from either Platte River's brief or its agreement at the hearing on this motion. In order for Platte River to have suffered prejudice, delaying coverage *arbitration* until after settlement would somehow have to put Platte River in a materially worse position than delaying coverage *litigation* until after settlement. It is not apparent why Platte River would be willing to forego its ability to participate in the settlement of the *Chopourian* action if it believed this case would go forward in this Court, yet would *not* have foregone its ability to participate in the settlement of the *Chopourian* action if it believed this case would proceed to arbitration. Platte River has not met its "heavy burden" of demonstrating such prejudice necessary to establish waiver. *St. Agnes*, 31 Cal. 4th at 1195.

The Court finds that Dignity did not waive its right to arbitration, especially in light of the section of the Standstill Agreement expressly preserving defenses existing prior to the stay of this case and Platte River's failure to establish waiver. *See* Smith Decl. Ex. 7 ¶ 10.

D.     First-to-File Rule

Lastly, Platte River argues that the "first-to-file" rule prohibits Dignity's arbitration action. *See* Pl.'s Mot. 8-9. The "first-to-file" rule is a "generally recognized doctrine of federal comity," which permits a district court to enjoin a subsequent action involving similar parties and issues filed in another district. *See Pacesetter Systems, Inc. v. Medtronic Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

The Court need not engage in a full-throated first-to-file analysis. First, Platte River fails to demonstrate the doctrine applies to the situation at bar; this is not a situation where two cases are pending in two different federal district courts, but rather where one action is in federal court and the other in arbitration. Second, the first-to-file doctrine is premised on a situation where two fora have concurrent jurisdiction over a dispute. *Cf. Pacesetter*, 678 F.2d at 95 ("when two identical actions are filed in courts of concurrent jurisdiction"). Here, there is no such dispute: either the case must

be adjudicated in arbitration or will be adjudicated in this Court. The first-to-file doctrine is inapposite.

## IV. CONCLUSION

The Court **DENIES** Platte River's motion to enjoin Dignity from proceeding with its arbitration action and declines to lift the stay in this matter pending resolution of the parties' ongoing arbitration dispute. While the Court discussed scheduling a case management conference at the hearing on this matter, the Court declines to schedule a case management conference at this time given its holding. Instead, with the expectation that arbitration shall proceed, the Court sets September 26, 2013 at 10:30 a.m. as a Status Conference.

This order disposes of Docket No. 32.

IT IS SO ORDERED.

Dated: March 19, 2013

_____
EDWARD M. CHEN
United States District Judge